## Screwmen's Benevolent Association v. R. E. Whitridge, Guardian.

### No. 1109. Decided May 29, 1902.

**1.—Benefit Society—Death of Beneficiary.**

A benefit secured by the certificate of a benevolent society, payable on the death of insured to a named beneficiary and providing that any change of beneficiaries should be made by surrender and cancellation of the certificate and issuance of a new one, did not become payable to the heir, their son, on death of both insured and beneficiary, unless the latter survived the former. (Pp. 542-545.)

**2.—Same.**

In order that the heir of the beneficiary might recover, where both insured and beneficiary, husband and wife, perished in the Galveston flood, it was necessary to show that the former died first. (Pp. 542-545.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Wm. T. Austin,* for appellant.—Article 16, section 14, of the constitution of the appellant association provides that upon the death of a member there shall be paid out of the endowment $275 to the beneficiary or beneficiaries named in the mortuary benefit certificate of such member. No provision is anywhere made in the constitution or by-laws of the association for the benefit to go to anyone else besides the beneficiary or beneficiaries named in the certificate. No provision is made for the heirs or any class of relatives or dependents upon the members to take the benefit in the absence or failure of the designated beneficiary or beneficiaries. This fact of itself, we submit, shows conclusively that it was intended by the provision above referred in the constitution of the appellant association to allow each member to designate some person or persons upon whom he might elect to bestow this charity, to receive this benefit upon his death, and conclusively evidences an intention to limit this benefit to such designated beneficiary or beneficiaries. No limit is

placed upon the member as to the class or character of person or persons he may select to receive this benefit. He may have a wife or family and yet select some person as the beneficiary who is in no way related to him, or one who has no claim upon his charity or bounty. There is nothing in the constitution or by-laws of the association to show that this benefit was intended as a fund to aid the family or heirs of deceased members of the association. The benefit is not secured to each and every member of the association and only to such members as may elect to avail themselves of the privilege of appointing some one to receive it. If any member fails to designate some one to receive the benefit upon his death, no right in such benefit accrues to his heirs or anyone else. The constitution and laws of the appellant association and the purposes of its organization are in no respect like the laws and rules of the ordinary fraternal insurance societies. This association, as indicated by its name, is organized for the purpose, through benevolence, to aid its members and is not an insurance order in any sense. The death benefit of $275 provided is merely incidental to the general purposes of the association. No assessments are levied upon the members of the association by reason of the benefit except a fee of 50 cents he pays upon the issuance of a certificate, or when there is a change of beneficiary, which, presumably, is only required to cover the expense the order is put to in the issuance of the certificate, and the amount of the benefit shows it is not intended as life insurance. But, in addition to what is said above, the certificate itself distinctly provides that the certificate can not be assigned by the member or disposed of by will, which means, we submit, that the member can not pass the benefit to anyone except the particular person or persons designated as beneficiary or beneficiaries in the certificate. This provision clearly limits the benefit to such designated beneficiary or beneficiaries, and reserves to the association all property rights in the fund until the member dies and there is a designated beneficiary or beneficiaries surviving to receive the fund, and then, and then only, does the association obligate itself to pay this fund to anyone. The authorities all recognize the right of benevolent associations to throw any restrictions or limitations they may see proper around benefits extended to their members, and to fix the class of persons who may be recipients of these benefits. So, considering the terms of the provision in appellant's constitution extending to its members the privilege of choosing some one to receive the benefit, and considering the provision in the certificate providing against any assignment or disposition being made of the certificate by the member, it is clear, we think, that this is equivalent to a distinct provision, in so many words, that the benefit shall lapse and revert to and remain with the association unless the designated beneficiary shall survive the member. It clearly can not have any less effect than to deprive the member of any property rights in the certificate which he can pass by will or inheritance to his legatee or heir, and it surely would exclude a legatee or heir from taking the benefit. If the member could not will the benefit to anyone, how could it pass to his

heir? But however this may be, we submit that it is not necessary, in order for the benefit to lapse and revert to the association, for the laws of the association or for the certificate to provide that the benefit shall lapse and revert to the association in the event the designated beneficiary dies preceding the member or there be no one qualified under the laws of the association to receive this benefit. We are aware that it has been held by the courts in cases where the laws of a fraternal insurance society show that the general purpose of the organization of the society is to provide an insurance fund for the benefit of the member's family or heirs, the family or heirs of the member, upon his death, will take the insurance in case there is no one present to take the fund who is qualified to receive same as the designated beneficiary or as belonging to the particular class of persons named in the rules of the association as those who may be designated as the beneficiary or beneficiaries of the fund. These decisions, as we understand them, are predicated upon the fact that it clearly appears from the rules and laws of the association that the intention is that the benefit shall not lapse and revert to the association, and that the member is given a vested interest in the benefit which will pass to his heirs if there be no other qualified person or persons under the laws of the association to take the same.

The heir, even in this class of cases, would not take the fund by descent or by virtue of the statutes of descent and distribution, but solely by virtue of the rules of the order and the purposes of its organization, which creates the fund for the benefit of the heirs in the event the designated beneficiary does not survive the member. It is a part of the contract made between the member and the association that the member's heirs will take the fund in the event there be no other qualified person to receive the same, and it is by reason of this provision of the contract that the heirs would receive the fund, and not by way of inheritance or by descent. We think, too, that it will appear upon examination that in every case where such an announcement has been made by the courts the purpose of the organization of the association under consideration is chiefly to provide life insurance for its members, and not where the benefit sued for, as in this case, is simply incidental to the purposes of the organization and is purely a charity and not life insurance.

*Maco Stewart,* for appellee, cited: Hildebrand v. Ames, 66 S. W. Rep., 129; Paden v. Briscoe, 81 Texas, 563; Evans v. Opperman, 76 Texas, 297; Faul v. Hulick, 29 Wash. Law Rep., 171; Cowman v. Rogers, 73 Md., 406; Wing v. Angrave, 8 H. L. C., 183; Underwood v. Wing, 4 De G. M. & G., 633; Martin v. Moran, 11 Texas Civ. App., 509; Knorr v. Association, 79 Hun, 83. That beneficiary has vested interests: Irwin v. Insurance Co., 39 S. W. Rep., 1097; In re Dobbel, 104 Cal., 432; Crowe v. Dobbel, 105 Cal., 350; Waldheim v. Insurance Co., 13 N. Y. Supp., 577; Brown v. Murray, 54 N. J. Eq., 594; Matter of Warner, 2 Connolly, 347; Thomas v. Cochran, 89 Md., 390; Association v. Hurlock, 46 Atl. Rep., 957; Brown's Appeal, 125 Pa. St., 303; Insurance

Co. v. Baldwin, 15 R. I., 106; Ricker v. Insurance Co., 27 Minn., 193; Trust Co. v. Insurance Co., 115 N. Y., 152; Small v. Jose, 86 Me., 120; Walsh v. Insurance Co., 133 N. Y., 408; Carpenter v. Negus, 17 N. Y. Misc., 172; Glenn v. Burns, 100 Tenn., 295; Voss v. Insurance Co., 119 Mich., 161; Macaulay v. Bank, 27 S. C., 215; Griffith v. Insurance Co., 101 Cal., 627; Insurance Co. v. Woods, 11 Ind. App., 335; Putnam v. Insurance Co., 42 La. Ann., 739; Jurgens v. Insurance Co., 114 Cal., 161; Bank v. Williams, 26 So. Rep., 965; Insurance Co. v. Buxer, 57 N. E. Rep., 66; In re Insurance Policy, 5 Ohio Dec., 561; 6 Am. and Eng. Enc. of Law, new ed., p. 5.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals of the First Supreme Judicial District has certified to this court the following statement and question:

"This suit was brought by R. W. Whitridge, as guardian of Victor Albertson, a minor, to recover of the Screwmen's Benevolent Association the sum of $275 as a death benefit, evidenced by a certificate issued to his deceased father, and in which his deceased mother was named as beneficiary.

"The sole defense urged by the association is that as it was not shown that the mother, the named beneficiary, survived the member, and as the certificate and laws of the order provided for payment to the person named, and no other, and as no other beneficiary was named upon the death of the first, the benefit lapsed to the order.

"The cause was tried by the court without a jury and resulted in a judgment for plaintiff for the sum sued for. The cause is pending in this court on the appeal of the association.

"The findings of fact prepared and filed by the trial court, and which we adopt, are as follows:

" 'R. W. Whitridge was regularly appointed guardian by the County Court of Galveston County, Texas, of the person and estate of Victor Albertson, a minor, and duly qualified as such; and of the minor's estate the property consisted in part of a mortuary benefit certificate in the sum of $275, issued by the defendant association to Emil Albertson, the father of said minor, by the terms of which certificate said association agreed that it would pay to Mrs. Emil Albertson, the wife of Emil Albertson, out of the mortuary benefit fund, the sum of $275, thirty days after satisfactory proofs of the death of said Emil Albertson; provided at the time of his death he should be in good standing and no charge be preferred against him in said association within thirty days; and other conditions, as shown in the certificate, not thought necessary to recite herein. By order of the county court the said guardian was authorized to bring suit against said defendant association. Defendant association's objects and purposes are purely charitable and benevolent.

" 'The mortuary benefit certificate was dated June 26, 1891, and regularly executed by the association and delivered to the father of said minor, and was in his possession when he and his wife perished in the

great storm in the city of Galveston, September 8, 1900, and there was no evidence as to who died first, Emil Albertson or his wife.

" 'That at the time of the issuance of said certificate and the death of said Emil Albertson, he was a member in good standing in the defendant association, having paid all dues and assessments of said association for which he was liable, and was not guilty of any violation of the rules and regulations of said association. That the minor, Victor Albertson, is the only surviving child of Emil Albertson and his wife, the beneficiary named in the mortuary benefit certificate, and that his father and mother both died intestate and no administration has been taken out in their estate, or either of them, and no necessity exists therefor.

" 'Proofs of death of Emil Albertson were made by plaintiff to defendant association more than thirty days prior to filing this suit, and no objections were made thereto, and defendant association refused to pay the amount of said mortuary benefit certificate to plaintiff.

. " 'Emil Albertson, as a member of said association, had the right under the by-laws of the association to change the beneficiary named in the mortuary benefit certificate, upon payment of a fee charged therefor. The by-laws do not provide that the certificate shall revert to the association upon failure of the beneficiary named therein, or for other reasons.'

"The certificate in question is as follows:

" 'No. ——.                                                    $——

" 'SCREWMEN'S BENEVOLENT ASSOCIATION,
(S. B. A.)
" 'OF GALVESTON, TEXAS.
" 'Mortuary Benefit Certificate.

" 'This is to certify that Emil Albertson is a member in good financial standing and entitled to all benefits in this association, which will pay to Mrs. Emil Albertson, out of the mortuary benefit fund, the sum of two hundred and seventy-five dollars, thirty days after satisfactory proof of the death of said Emil Albertson, provided, that, at the date of his death, the said Emil Albertson shall likewise be in good standing and entitled to all benefits in this association; that no charges of misconduct shall have then been preferred against him in this association, and that none be so preferred within said thirty days; and further provided, that the said Emil Albertson shall not have resigned his membership in this association, or have surrendered this certificate for cancellation and change of beneficiary, or shall not be under suspension or expelled, for any cause whatsoever, and that the said Emil Albertson shall have complied with all the requirements of the constitution, by-laws, rules and regulations now existing, or which may hereafter be enacted, for the government of this association; and provided, further, that no transfer or pledge, or by last will, can be made of this mortuary benefit certificate, and that any change of beneficiaries shall be made by the surrender and cancellation of this certificate, and the issuance of a new one, as required on the reverse hereof, and according to the laws, rules

and regulations of this association; and no person shall have any claim or right against this association to or by this certificate, after it shall have been surrendered and canceled, either for the issuance of a new certificate or by the payment of this certificate.

" 'In faith whereof, signature is hereto made by said Screwmen's Benevolent Association, through its officers, with said Emil Albertson, who accepts hereof under the above conditions, in the presence of the subscribing witnesses, at Galveston, this 26th day of June, A. D. 1891.
. (Signed.)' "

"On the back of the certificate were printed blanks for cancellation and reissuance to a new beneficiary, and for surrender upon payment thereof by the association.

"The mortuary or endowment fund was created by the collection from members of certain fees for issuance of certificate and change of beneficiaries, and assessments upon the death of members, etc., the fee required for issuance and reissuance of certificate being 50 cents, and the fee to be paid on death of member in good standing being 75 cents, and upon death of member not in good standing being 25 cents.

"Section 14 of article 16 of the constitution of the order provides that 'Thirty days after satisfactory proof of the death of a member in good financial standing and entitled to all the benefits in the association there shall be paid out of the endowment fund $275 to the beneficiaries named in the mortuary benefit certificate of such deceased member.'

"Neither the constitution nor the by-laws of the order restricted the named beneficiaries to any particular class. The member could designate whom he pleased. Nor does it appear from the record in any way that the family or relatives of a member were necessarily the objects of its bounty. The record does not show more specifically than as above stated the general nature, powers, and purposes of the association.

"We respectfully certify for your decision the following question:

"Under the facts stated, did the trial court err in holding that the benefit did not lapse to the association, but should be adjudged to plaintiff's ward?"

The trial court erred in holding that plaintiff's ward had the right to recover from the Screwmen's Benevolent Association the sum named in the benefit certificate sued upon.

By the terms of the certificate, the money was payable to Mrs. Albertson if she should survive Emil Albertson. There is no provision in the contract that in case of her death before that of the member any other person should have the right to receive the money; but, by the terms of the contract, in order to substitute another for her, it is required that the certificate should be surrendered and a new one issued. There is no provision in the by-laws or constitution of the association which gives a right to any other person upon the death of the beneficiary named in the certificate. In order for the minor plaintiff to recover, it was necessary to prove that his mother survived his father, for under the terms of this contract, when the named beneficiary died the contract itself lapsed,

with the right in the member, if living, to name another person to receive a new certificate. There was no proof that the mother survived the father.

We are referred to Bacon's Benefit Societies, volume 1, section 243a, in support of the judgment of the court. The language of the author is broad, but an examination of the authorities to which he refers will show that in all of the cases referred to there was a provision in the by-laws, constitution, or the contract itself which the court construed to give the right to the heir in case of death of the beneficiary named. See Haskins v. Kendall, 158 Mass., 224; Walsh v. Walsh, 20 N. Y. Supp., 933; Order of Columbus v. Fuqua, 60 S. W. Rep., 1020.